Charlotte Humble v. Harrah's North Carolina Casino Company and Mr. Bundy whenever you're ready. We'll hear from Thomas Bundy on behalf of plaintiff appellants. Your honors, the entity involved in the court's consideration of this appeal are as follows. Harrah's Casino Company is an operator of two with the Eastern Band of Cherokee Indians. They are a tribal sovereign and they are the owner of the two casinos. The tribal casino gaming enterprise is an instrumentality of the Eastern Band. They are created to participate in the tribal enterprise. I'll refer to these entities as a tribe because they have the same interests. Plaintiffs are a putative class of current and that bears Harrah's name. They are outfitted in Harrah's uniforms and they work pursuant to Harrah's training, supervision, and control. Plaintiffs sued Harrah's as a joint employer who is jointly and severally liable for the illegal wage practices at issue in their complaint. This case is about Harrah's actions. Harrah's does not challenge plaintiff allegations of its joint employment. We know from Salinas v. Commercial Interiors that joint employers are jointly and severally liable for any violations of the FLSA. Indeed, the federal regulations say the same. Thus, whether you are a real employer, as the district court referred to the tribe, or whether you are simply a named employer, which if we had an opportunity for that Harrah is indeed in fact a real employer, or if you are a joint employer, your honors, the liability is the same. You are individually liable for the wage practices of the joint employees. It is against this backdrop that we should consider the motion to dismiss pending for this court. This case involves the intersection of joint and several liability and sovereign immunity in the context of Rule 19 joinder. The district court abused this discretion by failing to consider Harrah's joint employment arguments, by failing to examine whether Harrah's is an adequate representative for the tribe in its absence, and by failing to look to the management agreement, the evidence that plaintiffs were able to provide from an internet search, because there is no discovery yet in this case that demonstrates Harrah's could bring the tribe into this case. For these reasons, the drastic remedy of dismissal, particularly before discovery is had, is not warranted. Let me ask you, I find this case somewhat involved and complex, and a lot of what you say seems to be supported, but what we have is an underlying policy that the tribes are immune and cannot be sued under the FLSA for violations of the FSLA. We have a casino here, or two casinos, but I would treat it as one just for purposes of discussion. We have a casino here that's owned by the tribe. All the income that comes in belongs to the tribe, the winnings and the revenue. The employees are in, maybe in large respect, tribal members, at least they're preferred under the agreement to be hired, and they're described as tribal all its revenues go into a bank account owned by the tribe, and Harrah's as the manager is allowed to draw on that account and pay the employees, and pay itself. The question is, isn't this really an effort to get at that money that belongs to the tribes and get around the immunity? Even if Harrah's is jointly and severally liable, it's purse is not used to pay the employees. The revenues pay the employees, and the revenues are the tribe's money. What we would be doing is diminishing the tribe's income money without them being in court. It's almost like a due process question. Shouldn't they have to be in court before you can diminish their assets by a court order? And that's the problem I'm facing, that there's this overarching policy to protect the tribes, whether I agree with it or not. That's a complex business of law going back to 1840s and 50s, whatever. But there is a policy, and the tribe cannot be sued under the FLSA. There's been no immunity. And so Harrah's is the manager, and you sue them, and you say they're jointly and severally liable. And as you point out, the management agreement gives Harrah's authority to do everything with respect to the employees. They have to favor tribal members first, but they hire the employees, they train them, they make the selections and make the But at bottom, Harrah's is still managing the tribe's money and running the tribe's casinos. But the management agreement says that the people who work there are going to be paid under the Fair Labor Standards Act. Yes, Your Honor. So they have to be paid under the Fair Labor Standards Act. Yes, Your Honor. What does it say, Fair Labor, or does it say you have to pay them overtime? Otherwise, the tribe doesn't, if this is true, the tribe doesn't have to comply with the Fair Labor Standards Act. I think that my perception of this thing, and I've done some work to look at it too, is that this issue of the sovereignty of the tribe is a red herring. That the casino Harrah's is going to operate, it has to comply by paying its employers. I don't know whether the But if it is good, the employees are entitled, not the employers, the employees are entitled to be paid, period. And that's what the management agreement says. That comes off the top. You've got to pay the people who work there. Anyway. And Judge King and Judge Niemeyer, you certainly said a lot. We're taking a lot of your time. This is an important point, and maybe we ought to try to clarify. Does the agreement say that the tribe has to comply? I didn't think the tribe had to comply with FLSA. It says that the people that work there get paid. Get paid overtime. They get paid according to law. They have to be legally paid. Perhaps I can help here. The agreement actually says that Harrah's has to comply with federal and state law. The tribe's vendors, which Harrah's would be one, would have to comply with the FLSA, and goes in detail to that extent. We raised this issue before the district court, and indeed, the discussion that we're having here today is symptomatic of the problems with the district court's order. Can you sue the tribe under the FLSA? We are certainly not raising that issue here. I do believe. I know, but if somehow you say that the employees have to comply with the FLSA, and the employees are paid by the tribe, and the tribe can't be sued. They didn't say the employees are paid by the tribe. They're paid by Harrah's. No, they're paid by the tribe. Well, they're paid. They work there. They're paid. I thought Harrah's administered it. Part of the problem, your honors, excuse me, is that there's no factual record. These are very germane questions to the issue that strikes out. But to answer your question. The money goes into the bank account under paragraph four. All the revenues, the winnings less the losses, what they call win, goes into a bank account. That money is casino money. And the management agreement authorizes Harrah's to draw checks on that to pay the employees as operating expenses, as well as itself for the percentage. And that's under the agreement. Well, the agreement says that Harrah's, that this judgment may be a business expense of the tribe if Harrah's does not act in an intentional way that violates the terms of the agreement. And certainly if federal and state law is a requirement of the agreement, and certainly if the tribe's constitution requires compliance with the FLSA, there would be a separate issue between Harrah's and the tribe as to whether the tribe indeed is responsible for this judgment. And this case is about a monetary judgment against Harrah's alone, consistent with joint and several liabilities. Which is a joint, under the allegations of the complaint, is a joint employer. And you say you don't have to sue them both. And we got the Salinas case, that Judge Wynn authored, that explains all that. If Salinas applies, you can do it this way. Absolutely, Your Honor. And there's no abrogation of the tribe's sovereign immunity. The tribe, under its management agreement, has already provided for the mechanism for which it would reimburse Harrah's. Again, we don't have the facts because there has been no discovery as to how this actually plays out in the business operations. But the tribe has waived any issue of immunity as it relates to Harrah's for disagreements over reimbursement. That's an issue with them. If we follow Harrah's analysis, and we look to whether or not... Harrah's doesn't use its own money to pay the employees. Harrah's draws on the bank accounts where the revenues of the casino go. And those revenues belong to the tribe. The casino is owned by the tribe, and the revenues belong to the tribe, and the bank account belongs to the tribe. The agreement makes it very clear Harrah's has authority to draw on that bank account to pay the employees and to pay itself. But the money that is being drawn there is tribal money. And it seems to me Rule 19 says you cannot diminish tribal money without them being present and able to defend themselves. They've already agreed to pay the employees under federal law. And this case is not seeking for Harrah's to pay from the tribe. This case is seeking Harrah's to pay. It's a... You can't get Harrah's to pay from the tribe. You can't because of his joint and severable liability, which is what you seek. And to get there, you're trying to see under Rule 19 that 19-1A sort of kicks it out. He's not a real employee. That is actually Harrah's. Once you get Harrah's, you can get the money from Harrah's. Harrah's is going to have a problem getting it from the tribe at that point because of the tribal immunity. So maybe I'm confused on it, but it seems to me the question of who's paying may come down the road once if you can establish the joint and severable, a joint liable for it, you simply get it from Harrah's. And Harrah's can get it from the tribe. Let's see how that works out. I'm not sure that happens. It does happen, Your Honor, because under the management agreement, the tribe has waived its immunity as it relates to disagreements with Harrah's as to the operation of the casinos. So Harrah's could file suit against the tribe. But that's not your issue. It's not my issue, but to the extent... Whether Harrah's can get it or not on an agreement with the tribe is different from whether you can get it. And whether it's made a tribe has waived it with Harrah's to do it. That's the tribe's business. Didn't have to, but if it chose to do it, but your aim is to go into rule 19 and said, these folks essentially don't apply. We're not necessary part of here. And it's joint and severable, joint and liable. I agree, Your Honor. But to the extent that there is a concern about the tribe having some marginal prejudice here because of this disagreement, speculative as it may be with Harrah's, Harrah's has a mechanism under rule 14 to bring the tribe in as a third party. It would cure any issues. Certainly would cure the drastic remedy of dismissal in this case before any discovery is had to find out what's truly going on under this operation. There is little dispute when you look at the actual facts and you apply it in this case to the rule 19 factors that under 19A1 that the plaintiffs can accord a complete relief from when you look at the tribe's prejudice, there's been no evidence. It's Harrah's burden to put on the evidence. We haven't heard from the tribe. The declaration that's two pages long, three pages long, if you look at the nameplate, doesn't say anything about being prejudiced, doesn't say anything about having to pay this judgment. And certainly when you- I'm sure it does. The argument, that was the entire argument they made before the district court. They're going to be prejudiced. They're not before the court and they can't be before the court under the immunity. And you're affecting, you're doing a lawsuit that's going to affect their liability. It's going to affect their agreement with Harrods. It's going to change their agreement with Harrods. It's going to change the flow of money and it's going to diminish the tribe's income. And to say that the tribe can be affected in that manner without being in court is, it gets down to almost a due process. And again, your honor, I would respectfully disagree that the tribe would be diminished. The tribe has already set up the mechanism for reimbursement under the management agreement from Harrods. If Harrods exceeded the scope of- That proves the point even more. But the fact of the matter is the money that is being used, the revenue from the casino is tribal money and it's put in that bank account. And this is made very clear under paragraph four. And the Harrods is given the authority to draw on that bank account and pay the operating expenses and pay itself. That's what is authority. The remainder in that after it pays those things is tribal money. It always was tribal money. And you're going to, in effect, diminish that revenue that belongs to the tribe. Now, whether I agree with the public policy on immunity, I find it hard to argue that it's not going to adversely affect the interest of the tribe. And your honor, I see him over time. Can I respond to your- Of course, of course. Thank you, your honor. To the extent that there is impact on the tribe, Harrods is an adequate representative. They both have the obligation of complying with the FLSA. And they both have the goal of maximizing revenues. The tribe is not the only entity that benefits from the casino's revenues. Harrods, as part of their management fee, gets a portion, undisclosed as it might be, of those revenues. And so Harrods standing in the shoes, as it's obligated to do under its duty to defend under the management agreement, there's no prejudice to the tribe. The interest is the same. They are an adequate representative. All right. Thank you. Thank you, your honor. All right. Ms. Eisenberg. Yes, your honor. Thank you. Good afternoon. May it please the court, Susan Eisenberg with my partner, Patrick Gahl, on behalf of the appellee and the defendant below Harrods North Carolina Casino Company. The issue before the court today is whether the district court abused its discretion. And listening to the conversation that just took place, I'd like to address a couple of those issues. Well, that's a little simplistic. It seems to me discretion, when you don't follow the law, we're talking about some very complex and fundamental principles of law. And they're either right or wrong. And obviously, that can inform later decisions. That may be discretionary. But at this point, the issue is a Rule 19 joinder issue. Correct. I agree with your honor. And the Rule 19 joinder issue, and I don't believe that there's a tension at all between the joint and several liability and the Rule 19. And the reason for that, and this court addressed it in the case of homebuyers, where just because there's joint liability for this particular issue, if there is additional interest that the non-present party has, the court's obligated to do a Rule 19 analysis, which the district court did in this case, and found, and relying pretty heavily on this court's decision in Ushanko versus Harris, virtually the same parties, same management agreement, same employment policies at issue. And this court found that dismissal was appropriate because the tribe has a continuing interest in the policies and procedures and the implementation of those policies and procedures as it relates to their employees. Now, the other question that came up was the operational expense. I mean, there are two things, it's very clear, that are paid directly by the tribe as operational expenses. The first is salaries, and there's no doubt about the fact that plaintiffs in this case were looking to get back wages, increased money for compensation for employees. Now, that would directly affect the economic viability of the tribe, and something that even plaintiffs admit they couldn't do by suing the tribe. So the tribe would ultimately pay it. The other aspect is the tribe would also ultimately pay any litigation cost and any judgment. The only exception is where Harris acts... Would they have to pay it, or could they just get it from Harris? No, well, Harris would pay it, but then as plaintiffs say that under the management agreement... Well, that's a totally different thing, isn't it? Well, it's actually... Yes, sir. I understand that, but I'm just asking without the management. I mean, any state, even with sovereign immunity, you can waive your immunity. You can waive it by purchasing insurance, you can do all kinds of stuff. If you've got an agreement with someone that you will pay, that's your business. But they didn't have to have the agreement, so if it's just joint and severable liability, and they went after Harris, would the tribe be obligated to pay without the management agreement? That's my question. Well, without the management agreement, Harris wouldn't be there, but... Well, if the management agreement did not have a provision in it that made it have to pay, in that particular instance, would they be able to go for it against the tribe? They couldn't go against the tribe, but it's... The reason being is because of tribal sovereign immunity. But they're not going against the tribe. The tribe's operations, it comes out of the tribe's unless it's a willful violation. And under the FLSA, the first two years of liability, there is no showing of willfulness. So we have plaintiffs, none of them are, any of them tribal members? Some of them are, some of them are not, yes, but they're all employees of the tribe. Who's the main plaintiffs here? The claim that they are not tribal members. Do you claim that they are? I'm not sure whether some of them are. Do you have any evidence that they are? But it doesn't make any difference. It makes a difference when you say claim. They simply indicate you don't have anything other than that. I just asked a question. Sure, I don't know whether each... Evidence seems to indicate, well, at least they're not members of the tribe, and they're making statements here in terms of they're having violations of the FLSA. The question really is, can the FSLA apply to a purported joint employee, one of which would be a tribe? Are there circuits that have dealt with that? That have dealt with the... The question of, can the FLSA apply a joint employee situation in which one of them is a tribe? Joint employment can exist... Are there circuits that have answered that question? No, and as close as we come... You see, the joint employer doctrine doesn't apply if one of them is an Indian tribe. No, what I've said is... Is that what you said? No, what I said was the joint employment doesn't preclude a Rule 19 analysis. The joint employer doctrine would have to not apply. I think you'd have to answer that yes to be able to get where you want to go. No, I... That joint employer doctrine wasn't considered by the magistrate judge or the district judge. The Salinas case was not mentioned, I don't think, in either the magistrate's report or the district judge's opinion. And the analysis of joint employers in this circuit, the proper analysis of respect to the joint employer doctrine set forth therein, in the Salinas case. And I don't know how you get past that and throw a case out before it even... There's an answer on the basis of a Rule 19 issue. You... They allege in their complaint, the plaintiffs, that Harris is a joint employer under the joint employer doctrine. If it is, it's liable for all of it under the principles of law that I've often been familiar with. I used to practice law. We'd pick out who we wanted to sue if there's a joint liability. And if there's contribution issues down the road, they're down the road between those that are jointly liable. But that doesn't tell this plaintiff that he's out in the street. Well, Your Honor, if I might respond to that. In a situation and the... How does this thing measure up under the Salinas case? Well... Sure. The Salinas case deals with joint employment. Joint employment doesn't preclude the analysis under Rule 19. And in this case, as the Fourth Circuit ruled in Homebuyers, where the non-present party has an interest, you have to do the Rule 19 analysis. And while the district court here, and the magistrate was accepted by the district court, went through all of the facts as alleged as true by the plaintiffs, went ahead and did the Rule 19 analysis and came down on the side of that this would adversely affect the tribe without them being present. But they didn't discuss the Salinas case. They didn't discuss it. They didn't analyze it. But they did. They didn't discuss the Salinas... They didn't discuss the joint employer document. Well, but they assumed because the facts set out all indicated that Harris has... The facts set out say they're the joint employer. You have to take the allegations of the complaint as true. They did. Yeah, but your argument isn't... Your argument is, I assume, that while the plaintiffs might get a complete remedy from Harris under a joint employment doctrine, the joint employment doctrine, assuming it's applicable, doesn't preclude the Rule 19 analysis because the joint and several judgment affects the liability of the absent party. Well, it... Interest. Interest, but... That's one of the main categories under Rule 19. Correct. Not only that, it doesn't give them complete relief. Because, you see, this is not a tort claim where it's one and done, pay the damages and move on. This has to... Why are you making that argument? That's the weakest argument you could be making. Well, because it does have a continuing effect on the tribe's ability to deal with its... But the issue under Rule 19, for your purposes, the issue under Rule 19 is not whether the plaintiffs can get a remedy from Harris. The issue under this is whether a joint and several judgment against Harris affects the tribe's interests. I think it does. Well, of course it does. And if it affects its interest, then Rule 19 says the absent party has to be able to defend itself. Correct. And in this case, what suing Harris is doing is allowing an end run around the joint and around the sovereign immunity, because it's not something that the plaintiffs could sue. Which subdivision of 19A are you going under? Well, there's a couple. I mean, first we're... You're arguing which one is Judge Nima. Well, where are... I thought you were moving under A1 or 1A. And that's how you got about the completeness business. Well, I was actually moving under all of them. But 1A is that the plaintiffs can't obtain complete relief because the policies won't necessarily change. But it also, if you look under 2... That is just a silly argument. I don't hate to use that word. But the fact is, if you can get a remedy against an employer in this regular, non-tribal context, you can get it against Harris. And the court can order anything it wants against Harris. And Harrell will have to pay it. And if there's some little particular aspect of it that they'll waive if it's a particular aspect that's applicable here. But they will get their money. It's 1B and then B1 are the two provisions. It says, as a practical matter, impair or impede the person's ability to protect the interest. Correct. That's the tribal interest. The tribal interest is not there. And then it says a judgment in the person's absence might prejudice that person in his financial, in his assets, or whatever way. Right. And the fact of the matter is joint and several liability under the Salinas is irrelevant. You can assume that it's going to occur. The question still remains under Rule 19, will a joint and several judgment adversely affect the interests of the tribe? Yes. And Rule 19 says if it does, then you bring them in. Exactly. And also... Leave us there. That's too much to package. It sounds like to me, you've conceded A. If you would second what Judge Niemeyer just said, you're saying, okay, we're going to forget A. We're going with B and B1. Is that... Are you there? No. No. But I'm also... You don't just say, okay, Judge Niemeyer. Because once you do it, I'm going to say she conceded A. You're telling me you don't concede A. I don't. But Judge Niemeyer doesn't think it's my strongest argument. I don't either. But I mean, I need to know what you think. I think the most important argument is the fact that it will... Which one? 19B what? Two. B2. How about B? How about... So 19A1B and two... Which one are you saying again? Two. The one that says that it will adversely affect the tribe and that it will adversely affect Harris because it will put them in a position of inconsistent obligations. Those are the two. Because of finding for the plaintiffs in this case... That's not an inconsistent obligation. That they have to pay people for working. They have to... If they're a joint employer, they have to pay the employees as required by law. Harris does. They have to pay. If they get a court order that tells them to pay, they pay. And if they have an issue with somebody else, that doesn't have anything to do with the employees getting paid. But that's the whole... It has nothing to do with the employees getting paid. The employees are entitled to be paid for their work. Yes, Your Honor. I mean, that's why we ended up with the Fair Labor Standards Act. But the issue... Because people weren't getting paid for work. But they get paid in this country for working. Yes, they do, Your Honor. That's right. And... Except maybe when they're working for Harris. No. In this situation, and they file a lawsuit and claim, we want to be paid. And they're entitled, if they prove it, to be paid. And if you have an issue as to who somebody owes you part of the money, that's between you and them. It doesn't have anything to do with these plaintiffs in this case. Let me hear your answer to this. But, Your Honor, that... This is the easiest case I've had here for such a long time. That assumes that... I don't think it's complex. The policies that were all approved by the tribe are the policies that are at issue in front of the district court. And the district court, if you remand this, will have to rule on those policies without the tribe being present to protect its policies that it approved and it implements, not Harris. If you can show you're not a joint employer, you're not liable. But if you are a joint employer, you're liable. Harris, you're liable to pay these people for what work they do. They say they're working down there and they don't get paid. And they're entitled to be paid under American law. But the policies are the tribe's policies that are being directly affected. What are we in particular in that question? They're paid policies. And whether or not they determined that certain employees were properly classified as exempt from overtime, whether there were certain policies that precluded the tribe from paying them for off the clock. And the agreement provides that they'll get paid 40 hours and then time and a half for over 40. Right. And doesn't have a three minute rule for addressing whatever preparing. They're going to get paid for that time. Yeah. And so that's the policy that's written in there. And the allegations of the complaint are that those are not even being complied with. That they are spending up to half an hour before on company ventures and not being paid for it. They're either training or whatever preparation for work. Right. But Your Honor, if you look at the evidence in the record and the management agreement. No evidence in the record. The management. There's no evidence in the record. There's no evidence in this record. There's a complaint. Your Honor, there was the management agreement. Well, that's part of it, isn't it? Yes. Allegedly, the management agreement in the complaint. Yes. And what I'm trying to point out is that the management. It's not if it's a management agreement. It's the one they got several years old. It's the one that was applicable. But it might be the one in the complaint, but they have a complaint. There is a complaint. And the complaint. And his allegations are taken as true. Correct. But if you go back and remand this case, the tribe has a right and an interest, a substantial interest in the policies and the implementation of those policies. The record also had a declaration to show Harris only had one employee. One employee over two casinos. And it was the tribe. That's part of the joint employment agreement. The fact you say somebody is an employee or not an employee and everything, you have to figure that out. You've got to go back to the Salinas case. There's a six-part test that you have to analyze. And if you go through that six-part test, on all six of them, I think you lose here. Probably. But you have to analyze it that way. And the four-circuit law. Right. But Your Honor, Salinas gets you- And you're a joint employer. Right. Make you liable for paying these folks for coming to work. Salinas gets us to the joint employer. The joint employer doesn't end the inquiry. The tribe is still entitled to an analysis under 19 A and B to determine whether it's a necessary party, and therefore- It doesn't have to be done at any time during the case, even. It doesn't have to be done up front. But anyway, the first thing you've got to do is have this joint employment thing. And you have to ascertain whether these folks have a claim and whether their complaint's good. But even if they do have a claim- And if you're a joint employer, you pay. Because we pay. But that doesn't change the fact that it's the tribe's policies and the implementation of those policies, which will- That's between you and the tribe. It's not as between these plaintiffs. Well, some of those plaintiffs are still employed. So yeah, it would actually have an ongoing effect. And the tribe's interest would be- Not if they're employed by Harris. Not if Harris is a joint employer. I'm interested in hearing her answer. Yeah. Go ahead and complete your answer. OK. Well, my answer is this. That the joint employment says there are two separate entities who are jointly and severally liable. And that's one test. Even if there's joint employment, you still have to move to the Rule 19 analysis. Take us through that analysis. I can't understand yet what you're- Take me specifically to the parts that you are invoking. OK. We're invoking the part that- A1 what? A1- You said he was gone. No, A is not gone. It's A2, not A1. Can I hear, please, what your argument is? Sure. A1 what? I don't have it in front of me. A1-2. I can tell you what it says. It says that the Harris will be subject to inconsistent obligations and that the tribe would be prejudiced to have their policies adjudicated without them there to defend it. So it's A1-B. B. And it has a subpart 1 and 2 under B. Right. OK. Now, under B, what do you claim? 19-B, what do you- Under 19-B, the tribe is an indispensable party for the similar reasons rendering it a necessary party, which is their policies- B1? Is that B1? That's B2. I'm sorry. I think it's B2. I don't have the- Isn't it important to be- If the whole argument is about Rule 19, shouldn't we have Rule 19 in front of us? I- yes, Your Honor. I should. And I see my time is up. I'd like to know the answer to this question, what your argument is. Because I happen to think you have better arguments than the ones you're making, but you think you're insisting on it. I want to hear what you're insisting on. One moment, Your Honor. And my partner will grab it for me. I don't have the number. What I have is the- OK, what's the language of 19-B that you're relying on? Well, I'm relying on the- the first part of the language is that any judgment would threaten to impair the tribe's ability to govern themselves. And so it has a practical interest that could be prejudiced. To the extent a judgment rendered in the person's absence might prejudice that person or the existing parties? Correct. That's the one? All right. And then the other is that Harris would be subject to inconsistent obligations. That's under the A, right? Under the A. You need to get- you need to first find if- if Correct. And the requirement is that the tribe is required because they have a protectable interest in any decision that's rendered, and they're not present. The other part of A is that Harris would be subject to inconsistent, potentially, obligations. And then B is the tribe is indispensable- What's the inconsistent obligation? If there's a judgment with only Harris and the judgment against them, the judgment has got to say that the policies and implementation of those policies were illegal. And if that's the case, then they- and the tribe's not bound by it, then Harris has an inconsistency. They have to abide by the judgment, or they have to abide by the tribe's policies that they- they passed on. And those could be inconsistent. If the tribe- did the tribe agree to abide by the FLSA? No. The tribe does not agree to abide by the FLSA and cannot be sued for failing to abide by the FLSA. There was some suggestion at the beginning of this argument that they had agreed to abide by it. And the answer question is they had not, right? They have not, but- But have agreed in the- in the- whatever it's called, the management agreement to pay the employees pursuant to federal law. No, the agreement is that Harris has agreed, any vendor that comes on agrees to abide by the law, which is exactly- Harris is in the- is a part of that agreement with the tribe. Correct. And employees are to be paid. Yes. Under that agreement. Employees have to be paid. It comes off the top. You have- they have to pay the employees according to federal law. That's all they're asking for is to be paid. Well, they're asking- It's what you all want to fight about, whether the policies are this or that. The policy is employees of corporations in this country are entitled to be paid according to federal law. And this is one of them. And that's exactly- And the joint employment agreement applies here. And to get where you want to go, you've got to overrule that Salinas case. That's our law in this circuit. If you didn't have Harris in play, or you had a manager that was much more deferential, like a restaurant manager, and it was clear that the employees worked only for the casino, federal law wouldn't apply, would it? No, it would not apply. You could not sue the tribe as the owner of the casino. We've gone over your- Yes. I would like to ask one question in relation to that. So then if the tribe was not an Indian tribe, would you concede that Harris could be a joint employer here? I would concede that Harris could be a joint employer, even in this case. But what I don't concede is that being a joint employer negates the obligation to do the Rule 19 analysis. Do you concede that an Indian tribe can be under the FLSA as a joint employer? No, the Indian tribe cannot be. They cannot be sued. They have not waived their sovereign immunity. I think that's a confliction. Whether they'd be sued, that was not the question at all that I heard, was whether they could be a joint employer. They are alleged in this complaint to be a joint employer. But- Yes. If you only sue the Harris, your client, your client's the only one sued. Correct. It's liable to pay these folks for working there. As I understand the issue that's being raised by these questions, is if you have a finding under Salinas that a tribe and a management are joint employers, and therefore jointly and severally responsible, the question is, since the tribe can't be sued under the FSLA, and the Harris can, can you require- can you proceed with that case forward when Harris can't- I mean, when the tribe can't be sued in federal court? Yes, and the answer to that is found in homebuyers, where if the tribe still has a protectable interest in the subject matter, they need to be present. If they can't be present, then the case has to be dismissed. Thank you. Let's hear from your colleague. Mr. Bundy. Thank you. Your Honor, a few things in rebuttal. First, the tribe's constitution at Article III, Section 95-1B, states that every employer who engages in business within the exterior boundaries of the tribe's reservation shall comply with all federal employment and wage laws, regulations, and standards. The constitution goes on to talk about how the employer shall identify employees as non-exempt and exempt as defined under the Fair Labor Standard Act. The rub comes, and this is a very subtle issue. You can be joint employer under Salinas, but you- the question, open question, is whether you can be jointly and severally liable where one of the employers is immune. And the answer is not obvious, as has been suggested. The answer has not been answered by any court. And the question is whether when you have joint and several liability under the FLSA and one person's a tribe and can't be sued under the FLSA, is that a Rule 19 situation where you have to join the tribe? And if you can't join the tribe, then you have to throw it out. I think, yeah. And I think that's really where we get to, I think. And applying your question to my opposing counsel, the issue of Rule 19b doesn't mandate that the case not proceed without the tribe, if there is immunity. Unless it's indispensable. If you remember the old rule, it was much easier to handle. A was whether somebody's a necessary party, and B was indispensable. Necessary doesn't mean you have to go without them. You can exclude them. But under B, if they're indispensable and you can't proceed without them, then you have to dismiss. And the question is, if you get over A and say they're interested in being affected, adversely affected, now the question is, can you proceed without them? And 19b sets forth the standards. And they claim that 19b1, the extent to which the judgment rendered a person's absence might prejudice that person, is the deal that they're relying on. But you have to balance those factors, Your Honor. You don't just look at factor 1 and then the analysis is over. You have to look at 1, 2, 3, 4. Every court that's looked on this says you don't have to look. If they can't be joined because of an immunity, you can't go through the others. You can't go through whether you can have a better remedy, or you can adjust, or you can do this. Well, we would respectfully disagree that they can't be joined because of the immunity. We're suing Harrahs and Harrahs alone for money. The policies that's at issue has been rescinded. We put that in the complaint. We're not asking. My question is, as I pose it again, is let's assume they're joint employers. Can a suit proceed against one of two joint employers when the other joint employer is immune? Absolutely, Your Honor, so long as. I know you say absolutely, but that's not been answered by any court. To get to that answer, Your Honor, you don't need to create new law. You need to look at the factors of Rule 19B, Rule 19A and 19B together. And assuming that under Rule 19A, the tribe is a required party, you would look at the factors in Rule 19B and say, what is the prejudice here? Is it merely a contribution clause in an agreement between the tribe and Harrahs? If so, that type of argument can be applied to all employers. And you'll see a perverse ruling as it relates to Rule 19, because employers will stick in contribution clause and say, wait a minute, I'm prejudice too. Is it the narrowly tailored relief under Rule 19B too? The plaintiffs can't make this any more about Harrahs and what Harrahs did. Harrahs alleging the tribe blessed these policies. Certainly, that would be contradictory to their constitution. And we've had no discovery to establish that. And so when you look at 19B too, that would indicate on a balancing test that indispensable is not established. When you look at the nature of the relief here, the FLSA has jurisdiction that lies in federal and state court. If this case is dismissed, what remedy do we have in tribal court against the tribe? While there is a constant- That goes to the fundamental policy. And I share this concern with you. But every employer on a reservation is not under federal law. And this has some twists in it, because the vendors who are not tribal companies are going to have to comply with federal law. And that's the policy. But the tribe itself doesn't have to comply with federal law. And in an automobile dealership in a reservation, which is owned by an Indian tribe, they don't have to comply with federal law on the land, unless somehow it was abrogated in the statute. I don't quite know how that works. Under what, 14th Amendment, Section 5, or whatever? Your Honor, I see I'm out of time. May I respond? Yeah, please. I think if we looked at Salias versus Mathis in the Ninth Circuit, where the Ninth Circuit determined that the FLSA, as a statute of general applicability, does apply to tribes and tribal businesses. The question that Your Honor is proposing is- No, it can't apply. It's not been abrogated. It's clear the tribe is not liable under FLSA. Respectfully. Its vendors are. But it is not liable unless they've abrogated immunity. Now, you show me where they have. I think there's cases that said they have not abrogated their immunity. Congress did not try to even abrogate that immunity. Respectfully, Your Honor. The applicability of the statute and the liability of abrogation of immunity would be viewed as two different things as it relates to the tribe and tribal businesses. And in this instance, when you have a tribe- If you're immune from an application of a statute, how can you be liable under the statute? It's not whether you can be liable. It's whether the statute would apply. And I think the Mathison case lays it out perfectly in the Ninth Circuit. Do you have a case where the FLSA applies to a tribe? The Mathison case talks about the FLSA being a statute of general applicability and applying to the tribe. Whether the tribe is liable and abrogated its immunity is an entirely separate issue. Well, does this turn on that question? Because I think if you want to get to an easy issue, if this turns on whether the FLSA applies to tribes, it doesn't, Your Honor. This case is about a monetary damage against Harris. Harris is invoking an agreement to bring in- You know, when I look at this case, what's interesting to me, the word Tuscarora, which is a Supreme Court case on this, hasn't come out. There are three cases from three different circuits. You've got the Eleventh Circuit. You've got the Ninth Circuit. And you have one other circuit. And they have specifically addressed this issue that deals with whether the FLSA applies to tribes. The only question is, does it amount to a judicial abrogation of the tribe's sovereign immunity? When you look at it from the perspective of Tuscarora, where the Supreme Court says general acts of Congress apply to tribes. And then you go to the Ninth Circuit case, which has become sort of a seminal case. It's been adopted in several cases. This Cool Lane case here. And they've outlined those exceptions. And you follow an exception. D.C. Circuit has gone a sort of a different way. So depending on the perspective that you approach this case here, if you approach it from the perspective that you can't get it on one hand, or that Congress says, through the Tuscarora case, can apply acts to the tribes. But there are exceptions. You then take the analysis there. We've not made that decision in this circuit as to whether we join the Ninth Circuit or join the D.C. Circuit on other cases. But none of that I've heard today. And I find it incredible. We've gotten locked up in this whole business of whether there's money going to the tribe and all other things, when we clearly have this United States Supreme Court case that sort of sets the beginning of it. And the interpretation of Tuscarora has yet to be made in this circuit, which I think impacts this case. And, Your Honor, whether the tribe has abrogated its immunity is not an issue that we are proceeding with. Because joint and several liability as the bedrock of joint employment is clear. And when you look at the basis for it— That begs the question. Because clearly, Salinas provides for joint employers under this test. The question is, when you're a joint employer, do you have joint and several liability in a case where one of the employers is immune from the statute and the other is not? And that has not been answered. And the answer in Rule 19 analysis says, if the judgment against one of the joint and several employers, liability, affects the interests of the other, then it implicates Rule 19 at its heart. And you have to conduct that analysis. And I think you have to start with the notion that you have two employers, because that's the allegation you've made. You have two employers jointly employing employees. And you start with that. And one of them is immune and the other is not. Can you proceed against the one that's not without affecting the one that's immune? And respectfully, Your Honor, I'm out of time. But if you use the factors under Rule 19 and you balance them, we believe that you can. But you're not alleging that the other one's immune. And you don't—that's not pertinent to this lawsuit. They're entitled to—you're entitled to pick and choose who you want to sue. Here, you only want to sue Harris, because that's the one the people, as far as you're concerned, work for. I agree, Your Honor. It's the bedrock principle of joint and several. And they won't pay it. And you can get it from them. Okay. Thank you, Your Honor. I think we've given enough time. Why don't we adjourn for the day and come down and greet counsel? Is that all right? Do you have any more questions? No. I think we should go home. We all— This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Paul V. Niemeyer, Robert B. King, James A. Wynn Jr.